UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JACK GONCALVES,
    Plaintiff,

v.

DEPARTMENT OF PUBLIC SAFETY,
DIVISION OF STATE POLICE,
    Defendant.

No. 3:10-cv-01602 (JAM)

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Jack Goncalves was a Connecticut state trooper of Portuguese ethnicity. In late 2009, plaintiff was eligible for promotion to the rank of sergeant, and his commanding officer, Lieutenant Anthony Schirillo, declined to recommend him for promotion. Plaintiff was not promoted that year, and he was passed over in favor of other troopers who scored lower than he did on the civil service promotional examination. Plaintiff filed suit under Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act alleging that the decision to not promote him was motivated, at least in part, by his Portuguese ethnicity. Defendant has moved for summary judgment, and I now grant the motion because plaintiff has fallen short of showing a genuine issue of unlawful discrimination for a jury to consider at trial.

### BACKGROUND

Plaintiff joined the Connecticut State Police in 1997 as a state trooper. After a few years, he decided to take a civil service examination to assess his eligibility for promotion to the rank of sergeant. Troopers who pass this examination are added to a promotion-eligible list and ranked according to their score. After failing the exam twice, plaintiff passed it in 2007 and was therefore placed on the promotion-eligible list.

1

In 2009, the State Police conducted a round of promotions. To determine which among 22 promotion-eligible troopers would actually be promoted, the agency considered not only the promotion-eligible troopers' exam scores, but also their annual performance evaluations, disciplinary histories, and sick time records over the preceding two years, as well as other relevant documentation provided by the troopers' commanding officers.

Plaintiff had received positive annual performance evaluations, rating him as "superior" in 2007 and "very good" in 2008 and 2009. In addition, plaintiff's supervisors documented several incidents—good and bad—regarding his performance over the prior two years. First, in August 2008, plaintiff's then-supervisor, Sergeant James Lynch, issued plaintiff a "Performance Evaluation or Observation Report" (POR)—a document in which notable behavior is recorded—reprimanding plaintiff for failing to request written permission to use his police cruiser while on vacation. The POR noted that plaintiff used his police cruiser without permission during his vacation in mid-July and was reminded on August 11, after his return, that this violated State Police policy. One week later, on August 18, plaintiff again went on vacation with the cruiser and he again failed to request permission. At this point, Sergeant Lynch contacted plaintiff during his vacation, instructed him to return the cruiser immediately, and subsequently issued the POR.

In February 2009, Sergeant Lynch issued another POR indicating that although plaintiff had performed his primary administrative tasks satisfactorily, he had failed to "take any initiative to conduct or assist with basic patrol functions" over the previous six months, as he had been instructed to do. Doc. #21-6 at 37. His supervisor stated that "[t]his lack of activity clearly indicates that [plaintiff] refuses to make an effort to change his routine." *Id.* The following month, Sergeant Lynch issued a final POR stating that plaintiff had trained another trooper in the

2

evidence room procedures before plaintiff returned to patrol operations, where "he adapted well." Doc. #24-1 at 3.

In April 2009, plaintiff's new immediate supervisor, Sergeant Paul Hufcut, issued plaintiff yet another POR for failing to adequately conduct two fugitive investigations. In the first case, a warrant for a fugitive's escape had issued in 1999, and plaintiff had submitted semi-annual updates on the fugitive investigation over the following ten years. But in 2009, Hufcut discovered that plaintiff had failed to look at the fugitive's arrest records, which were attached to plaintiff's 2003 and 2004 updates, and which indicated that the fugitive had been deceased since 2002. In the second case, plaintiff failed to investigate a fugitive's Florida address or contact information for at least three years, despite the fact that the record indicated that the fugitive had a valid Florida driver's license. Based on these oversights, Hufcut concluded that plaintiff "lacks attention to detail," and suggested that he "seek assistance from [his supervisor] or desk personnel" when conducting fugitive investigations in the future. Doc. #21-7 at 5–6.

In a POR covering the period from March through May 2009, Hufcut noted that plaintiff's "reports were well written" and submitted on time, and that "[h]e was one of the platoon leaders in motor vehicle activity." Doc. #24-1 at 4. The following August, Hufcut issued an additional POR noting that plaintiff had received a letter from the president of the Vasco da Gama Portuguese Cultural and Civic Center commending him for his civic engagement and leadership.

Finally, on October 3, 2009, Hufcut was instructed to issue plaintiff one more POR reprimanding him for failing to notify his supervisor when leaving his regular patrol route in the middle of the work day to attend his son's soccer game. The report indicated that in mid-September, the State Police had fielded a citizen complaint from someone who had observed

plaintiff in uniform coaching his son's soccer game. Plaintiff was on duty at the time and had notified the dispatch officer, but had not requested permission from his supervisor, which Hufcut asserted was a violation of State Police policy. Ten days later, plaintiff did it again, attending a soccer game 15 minutes outside of his patrol area after notifying only the dispatch officer rather than asking his supervisor's permission. At that time, Hufcut discussed the problem with plaintiff, and plaintiff responded that "[h]e did not understand why people would have complained," noting that instead "they should have seen him as a good father." Doc. #21-6 at 15. Nonetheless, plaintiff assured Hufcut that it would not happen again.

In September 2009, when the State Police was considering troopers for promotion, the commanding officer of each trooper on the promotion-eligible list was asked to provide an objective evaluation of the troopers under his command. At the time, Lieutenant Anthony Schirillo was plaintiff's commanding officer—a position he had held for about one month. Schirillo knew that plaintiff was of Portuguese ethnicity. Every year, plaintiff participated in the Vasco da Gama Portuguese Cultural Association parade, marching alongside other officers of Portuguese ethnicity. In 2009, Schirillo granted plaintiff permission to participate in the parade and instructed him to take pictures for the Trooper Magazine.

To compose his evaluation regarding plaintiff's promotion, Schirillo reviewed plaintiff's record, including the PORs from the previous two years, and discussed the issues with Hufcut. Schirillo filed his evaluation on October 7, 2009, in which he declined to recommend plaintiff for promotion because plaintiff "has been lacking . . . in self initiated activity and work ethic" and "only does the minimum required to get the job done." *Id.* at 12. Schirillo referenced the recent soccer game incidents as examples.

Schirillo filed an evaluation for only one other trooper on the promotion-eligible list in 2009—Darren Perillo, who is of Italian ancestry. In that evaluation, Schirillo reported that he had questions about Perillo's "honesty and integrity" in relation to a 2004 larceny arrest, and he similarly declined to recommend Perillo for promotion. Doc. #21-8 at 29. Of the remaining 20 troopers on the promotion-eligible list, only one other trooper—Michael Rondinone—received something other than a positive recommendation from his commanding officer. Rondinone's evaluation was neutral because his supervisor had "not had any interaction, observation or supervision" of Rondinone, because Rondinone had been away for an extended period on active military service. Doc. #21-7 at 20.

The next step in the evaluation process was for plaintiff to be interviewed by a panel of police supervisors with the rank of lieutenant colonel, none of whom was personally aware of plaintiff's ethnicity (although the State Police had official records documenting plaintiff's Portuguese ethnicity). Ultimately, plaintiff was not offered a promotion, and he was passed over for individuals who were ranked lower on the list of exam scores.

In November 2009, plaintiff filed a discrimination complaint with the Connecticut Commission on Human Rights and Opportunities, and then filed this lawsuit in October 2010. That same year, 2010, plaintiff passed the sergeant promotional examination again, and in December 2011, he was promoted to the rank of sergeant. Defendant now moves for summary judgment.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)).

Plaintiff alleges that defendant's application of its 2009 promotion process amounts to disparate treatment. He has two theories to support this allegation: first, that the State Police intentionally discriminated against him when it decided not to promote him, and second, that Lieutenant Schirillo's negative evaluation of plaintiff was tainted by discrimination, and that the promotional panel members relied on that evaluation when making their decision.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate because of an employee's national origin, including the national origin of an employee's ancestors or family members. 42 U.S.C. § 2000e-2(a)(1); *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973); 29 C.F.R. § 1606.1. Connecticut's cognate anti-discrimination law, the Connecticut Fair Employment Practices Act (CFEPA), similarly prohibits discrimination based on national origin or ancestry. *See* Conn. Gen. Stat. § 46a-60(a)(1).

Plaintiff's federal and state law claims are governed alike by the familiar *McDonnell*

*Douglas* burden-shifting framework. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010); *Craine v. Trinity Coll.*, 259 Conn. 625, 636–37 & 637 n.6, 791 A.2d 518 (2002). Accordingly, at the outset, plaintiff must present a *prima facie* case of discriminatory failure-to-promote by demonstrating (1) that he is a member of a protected class; (2) that he applied and was qualified for an open position; (3) that he was rejected for the position; and (4) that either "the position remained open and the employer continued to seek applicants having the plaintiff's qualifications," *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (internal quotation marks and citations omitted), or the position was filled by "someone not a member of his protected class." *de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

If plaintiff succeeds in making this *prima facie* showing, then "the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions." *Aulicino*, 580 F.3d at 80 (internal quotation marks and citation omitted). If defendant meets that burden, ultimately, plaintiff in turn must prove "that the employer's stated reason was a pretext for discrimination," and it is clear that he cannot meet that burden unless he shows both that the employer's stated reason is untrue or incomplete, and that discrimination was a motivating factor for the decision to not promote him. 42 U.S.C. § 2000e-2(a), (m); *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 157 (2d Cir. 2010); *Aulicino*, 580 F.3d at 80.

Here, plaintiff has established a *prima facie* case under the *McDonnell Douglas* test. Defendant concedes three of the four sub-elements: plaintiff is of Portuguese origin, was qualified for promotion, and was not promoted. Plaintiff further alleges that he personally knows that none of the individuals ever promoted to the rank of sergeant before plaintiff's 2010

7

promotion—including the lower-ranked individuals who were promoted in 2009—was of Portuguese origin or ancestry. Doc. #24-2 at 6 (Interrogatory Answer #9). This evidence, though self-serving, is "competent" enough to support an inference of discrimination. *See Tolan*, 134 S. Ct. at 1866–68; *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998) ("To hold . . . that the nonmovant's allegations of fact are (because 'self-serving') insufficient to fend off summary judgment would be to thrust the courts—at an inappropriate stage—into an adjudication of the merits," and "[s]uch a radical change in the courts' role would be inappropriate not just in the discrimination context, but everywhere.").

As to the second stage of the *McDonnell Douglas* analysis, defendant has articulated non-discriminatory reasons for not promoting plaintiff to the rank of sergeant. It has adduced substantial evidence that plaintiff had received several unfavorable PORs in the preceding 24 months that referenced his failure to follow rules and regulations, lack of initiative, and inattention to detail, and that for these reasons Lieutenant Schirillo did not recommend plaintiff for promotion.

Plaintiff's case founders on the final *McDonnell Douglas* prong. He is unable to show a genuine issue of fact to suggest that defendant's reasons are pretextual or inaccurate or that unlawful discrimination by reason of plaintiff's Portuguese heritage was a motivating factor for defendant's failure to promote him to a sergeant position in 2009. Plaintiff contends, for example, that although he received a POR for leaving work to watch his child's soccer game, he had in fact followed the standard informal protocol when leaving one's patrol, which involved seeking permission from the dispatch officer rather than from plaintiff's immediate supervisor. But even assuming this were true, as I must on summary judgment, it does not indicate that any national origin prejudice was involved in either his supervisors' decision to issue the POR or the

8

promotional panel's consideration of it.

Title VII protects against status-based discrimination and is not otherwise "'a general civility code for the American workplace.'" *Redd v. New York Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). An employer may take an adverse action against an employee "for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all," so long as the employer does not act for an unlawful discriminatory reason. *Collins v. American Red Cross*, 715 F.3d 994, 1001 (7th Cir. 2013) (quoting *Malarca v. City of Madison*, 224 F.3d 727, 731 (7th Cir. 2000)). A plaintiff's showing that the employer made the wrong employment decision does not suffice to survive summary judgment absent other circumstantial evidence that the action was motivated by plaintiff's protected status or evidence that the employer's stated reason is incredible on its face. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013) (citation omitted); *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988). And he has presented no such evidence here.

It was not patently unreasonable or incredible for the State Police to have based its decision on the aforementioned negative PORs. Nor can I credit plaintiff's allegation that the State Police treated at least some other troopers more favorably than plaintiff and in a manner that suggests national origin discrimination. Plaintiff refers to non-Portuguese troopers, including Ed Olavarrio, Wilfredo Mercado, Michael Rondinone, Stephen Cebelus, and Robert Girard, each of whom, like plaintiff, had disciplinary issues or had received negative PORs in the past but was promoted to the rank of sergeant nonetheless. It is fair game for plaintiff to rely on comparator evidence, but whether comparators are similarly situated "requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Ruiz v. Cnty.*

*of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010). And none of these individuals was "similarly situated" to plaintiff. First, neither Olavarrio nor Mercado were members of plaintiff's 2009 promotion-eligible class, which alone means that they were not "'subject to the same performance evaluation and discipline standards'" as plaintiff. *Id.* at 493–94 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). Moreover Rondinone, Cebelus, and Girard were evaluated for promotion by lieutenants other than Lieutenant Schirillo, and none received an explicitly negative evaluation, as plaintiff did. *Compare* Doc. #21-6 at 12 *with* Docs. #21-7 at 20; #21-8 at 4, 21. Accordingly, their different treatment does not support plaintiff's claim.

Plaintiff's claim that defendant failed to promote any individuals of Portuguese descent also does little to support his allegation. First, he has done nothing to show that there was a statistically significant number of Portuguese-origin candidates who were denied promotion. Moreover, even verifiable statistical evidence would be "insufficient to establish which individual defendants engaged in purposeful discrimination" because "[s]tatistical disparities may be, and often are, attributable to a subset of actors—not to every actor who had an opportunity to discriminate." *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) (citing *Wal–Mart Stores, Inc. v. Dukes*, ––– U.S. –––, 131 S. Ct. 2541, 2555 (2011)).

Nor can plaintiff support his "cat's paw" theory that the State Police's decision, even if made without clear bias, was improperly influenced by a discriminatory supervisor, Lieutenant Schirillo. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 131 S. Ct. 1186, 1194 (2011). I accept that when Schirillo filed his negative evaluation, he had spent only about two months supervising plaintiff, and that he had a limited basis of personal knowledge to draw from. And indeed, there is some evidence to support plaintiff's contention that Schirillo's reliance on the soccer game POR—like the panel members'—may have been questionable in light of the informal protocol.

10

But, for the reasons discussed above, I do not now determine whether Schirillo properly weighed the facts before him because I see no evidence that his decision was entirely without merit or that he carried a bias against Portuguese troopers.

It is entirely credible for Schirillo, like the panel members, to have based his evaluation on the negative PORs. To the extent that Schirillo did not mention in his evaluation any positive PORs that plaintiff received, or gave outsized weight to the recent soccer game incidents, there is no indication that these actions were the product of anti-Portuguese prejudice. There is no evidence that Schirillo or anyone else in Troop G held any animus towards plaintiff or individuals of Portuguese descent. To the contrary, Schirillo allowed plaintiff to participate in a Portuguese cultural activity and suggested that plaintiff take pictures of the event to submit to the Trooper Magazine.

Nor is there any indication that Schirillo treated plaintiff differently than other non-Portuguese troopers under his supervision. Schirillo evaluated only one other member of the 2009 promotion-eligible class, Trooper Perillo, whom he declined to recommend because of a 2004 arrest. Schirillo's evaluation of Perillo did not mention anything positive that happened in the intervening five years. In his evaluations of both plaintiff and Perillo, Schirillo considered each trooper's disciplinary history and wrote: "In good conscience I cannot recommend that [they] be promoted to the rank of Sergeant." Docs. #21-6 at 12, #21-8 at 29.

Nothing plausibly suggests that either Schirillo's evaluation or the panel's promotion decision was tainted by discrimination. To the contrary, Schirillo and the panel members relied on several evaluations written by Hufcut, and Hufcut—to whom plaintiff attributes no prejudice—affirmed the accuracy of Schirillo's evaluation. The panel members properly relied on Schirillo's negative evaluation.

## CONCLUSION

In short, no genuine fact issue suggests that anti-Portuguese discrimination was a motivating factor in defendant's decision not to promote plaintiff to the position of sergeant in 2009. Accordingly, I **GRANT** defendant's motion for summary judgment on all counts.

It is so ordered.

Dated at Bridgeport this 9th day of February 2015.

                                        /s/ Jeffrey Alker Meyer
                                        Jeffrey Alker Meyer
                                        United States District Judge